Gregory Kenyota (SBN 282304)
Bochner PLLC
1040 Avenue of the Americas, 15th Fl.
New York, NY 10018
Phone Number: (646) 971-0685
Email:  gkenyota@bochner.law

*Attorney for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WSG VON DUTCH, LLC, a Delaware limited liability company,<br><br>     *Plaintiff,*<br>  v.<br><br>SHEIN DISTRIBUTION CORPORATION, a Delaware corporation; SHEIN US SERVICES, LLC, a Delaware limited liability company; and SHEIN TECHNOLOGY LLC, a Delaware limited liability company,<br><br>     *Defendants.* | Case No.: 2:26-cv-6105<br><br>**COMPLAINT FOR:**<br><br>1. **FEDERAL TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)**<br>2. **FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))**<br>3. **FEDERAL TRADEMARK DILUTION (15 U.S.C. § 1125(c))**<br>4. **CALIFORNIA COMMON LAW TRADEMARK INFRINGEMENT**<br>5. **CALIFORNIA COMMON LAW DILUTION**<br>6. **COMMON LAW UNFAIR COMPETITION**<br>7. **CALIFORNIA UNFAIR COMPETITION AND UNFAIR BUSINESS PRACTICES (Cal. Bus. & Prof. Code § 17200, et seq.)**<br>8. **VICARIOUS TRADEMARK INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

1

**COMPLAINT; DEMAND FOR JURY TRIAL**

Plaintiff WSG Von Dutch, LLC ("**Plaintiff**" or "**WSG**"), by and through its undersigned counsel, hereby files this Complaint against defendants SHEIN DISTRIBUTION CORPORATION ("**Shein Distribution**"), SHEIN US SERVICES, LLC ("**Shein US Services**"), and SHEIN TECHNOLOGY LLC ("**Shein Technology**") (collectively, "**Defendants**") and, in support thereof, states as follows:

## NATURE OF ACTION

1. This is an action to remedy acts of, *inter alia*, federal and state trademark infringement, counterfeiting, false designation of origin and misrepresentation in commerce, unfair competition, and dilution, all caused by Defendants' unauthorized use and infringement of Plaintiff's famous and valuable VON DUTCH trademarks, including but not limited to "VON DUTCH" in standard characters, the stylized VON DUTCH logo depicted as , and the famous flying eyeball design marks depicted as  and ![flying eyeball design] (collectively, the "**VON DUTCH Marks**"), in connection with the marketing, promotion, distribution, offering for sale, and sale of fashion apparel and related merchandise through Defendants' website us.shein.com and various "SHEIN" mobile shopping applications (collectively, the "**SHEIN Sites**").

2. Despite actual notice of Plaintiff's rights, including formal infringement reports submitted through Defendants' own intellectual property complaint portal and a detailed cease and desist letter, Defendants have failed and refused to remove the infringing products and continue to willfully exploit the VON DUTCH Marks in commerce. When Defendants did take limited action, they adopted a piecemeal approach that was wholly inadequate, removing only individually identified SKUs while allowing the vast majority of infringing

2

**COMPLAINT; DEMAND FOR JURY TRIAL**

products to remain available. When Defendants eventually blocked the search term "von dutch" on the SHEIN Sites, third-party sellers immediately circumvented the restriction by using deliberate misspellings and variations, and Defendants took no action to address these evasion tactics.

3. Defendants' infringement is not merely theoretical. It has caused concrete, documented harm to Plaintiff's exclusive retail partnerships and licensing program. Authorized retailers holding exclusive licenses to specific VON DUTCH artwork and designs have complained to Plaintiff about the presence of unauthorized, counterfeit VON DUTCH products on the SHEIN Sites, have threatened to terminate or modify their exclusive arrangements, and have begun cutting orders as a direct result of Defendants' infringing conduct. Defendants' willful infringement is actively destroying Plaintiff's business relationships and the carefully constructed exclusivity that underpins the value of the VON DUTCH brand.

## THE PARTIES

4. Plaintiff WSG Von Dutch, LLC is a Delaware limited liability company with its principal place of business at 530 N. Michigan Ave., Kenilworth, New Jersey 07033. Plaintiff is the owner of the famous VON DUTCH Marks and the goodwill associated therewith.

5. Upon information and belief, Defendant Shein Distribution is a Delaware corporation registered to do business in California, with its principal place of business located at 777 S. Alameda St., Ste. 400, Los Angeles, California 90021.

6. Upon information and belief, Defendant Shein US Services is a Delaware limited liability company registered to do business in California, with its principal place of business located at 777 S. Alameda St., Ste. 400, Los Angeles, California 90021.

3
**COMPLAINT; DEMAND FOR JURY TRIAL**

7. Upon information and belief, Defendant Shein Technology is a Delaware limited liability company registered to do business in California, with its principal place of business located at 777 S. Alameda St., Ste. 400, Los Angeles, California 90021.

8. Plaintiff is informed and believes, and based thereon alleges, that at all times herein mentioned, Defendants acted in concert and conspired with or aided and abetted each other to do the acts complained of in this Complaint. Further, Plaintiff is informed and believes, and based thereon alleges, that at all times herein mentioned, all Defendants acted as an agent for the other, and, as such, were at all times mentioned herein acting within the course and scope of such agency.

9. Plaintiff is informed and believes, and based thereon alleges, that Defendants are commonly owned and managed and are engaging in a joint enterprise to commit the acts alleged herein. Defendants and their affiliated entities represent to the world, including prospective and actual customers, that "SHEIN" is a single worldwide entity.

### JURISDICTION AND VENUE

10. This action arises under the Federal Trademark Act, 15 U.S.C. § 1051, et seq. (the "**Lanham Act**"), and under related statutory and common laws of the State of California, including but not limited to California Business and Professions Code § 17200, et seq.

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) and 15 U.S.C. §§ 1114 and 1125, as, among other things, Plaintiff's causes of action arise under the Lanham Act. Further, this Court has supplemental jurisdiction over Plaintiff's California state law claims pursuant to 28 U.S.C. § 1367.

12. This Court has personal jurisdiction over Defendants because Defendants are registered to do business in California, maintain their principal place of business in Los Angeles, California, and have marketed, promoted, sold, and distributed Defendants' goods and

**COMPLAINT; DEMAND FOR JURY TRIAL**

services in this Judicial District. Defendants conduct or transact substantial business activities and contract to supply goods or services in this State, and Defendants have purposefully availed themselves of the jurisdiction of this Court by transacting business in this State. Defendants have marketed, promoted, and distributed their services in this State and maintain sufficient minimum contacts with this State and/or sufficiently avail themselves of the markets in this State through their promotion, sales, distribution, and marketing to render the exercise of jurisdiction over Defendants by this Court permissible.

13. Further, the "U.S. Terms of Service" on the us.shein.com website state that the site is provided by Shein US Services, LLC, and that the "Services are intended for U.S.-based users." The Terms of Service further dictate that courts located in California are the "Exclusive venue" for legal disputes for users in the United States.

14. Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants' conduct resulted in actionable conduct within this Judicial District, the harms and obligations sued upon were incurred and occurred in Los Angeles County, California, and Defendants are subject to the Court's personal jurisdiction with respect to this action. Venue is also proper in this Judicial District under 28 U.S.C. § 1400(a) because each of the Defendants resides or may be found here.

## FACTUAL BACKGROUND

### The VON DUTCH Marks

15. Plaintiff is the owner of the famous VON DUTCH brand, one of the most recognizable and iconic fashion brands in the United States and internationally. The VON DUTCH brand has been synonymous with American streetwear and fashion culture since the mid-1990s.

5

**COMPLAINT; DEMAND FOR JURY TRIAL**

16. Plaintiff is the owner of several U.S. trademark registrations for the VON DUTCH Marks as set forth on the Principal Register of the United States Patent and Trademark Office (the "**USPTO**"), including but not limited to:

a. VON DUTCH (standard characters), U.S. Registration No. 2,380,173, for jackets and T-shirts in Class 25, with a first use in commerce date of June 1, 1996;

b. VON DUTCH, U.S. Registration No. 4,081,825, for the following:

Class 14: jewelry; chronometric instruments; silver ware other than cutlery, forks and spoons, namely, rings, necklaces, bracelets, earrings; rings being jewelry; earrings; bracelets being jewelry; necklaces being jewelry; ornaments being jewelry, namely, ornamental pins, hat ornaments of precious metal; watches; chronographs as watches; novelty key rings of precious metal

Class 18: goods made of these materials (leather and imitations of leather) and not included in other classes, namely, leather handbags, leather purses, leather bags and wallets; traveling bags; card cases and notecases, namely, business card cases, name card cases, credit card cases; leather key cases; bags for climbers in the nature of all-purpose carrying bags; bags for campers in the nature of backpacks; traveling bags, beach bags, school bags; cases specially designed to contain toiletry articles, sold empty; unfitted toiletry and make-up bags, sold empty; wallets, purses not of precious metal; collars for animals; bags for sports

Class 25: Clothing, namely, footwear, headgear in the nature of headwear; shirts; leather or imitation leather clothing, namely, pants, shirts, trousers, coats; feminine clothing articles, namely, lingerie, skirts and dresses; hoods as clothing; belts as clothing; gloves as clothing; scarves; neckties, hosiery; socks; slippers; beach, ski or sports footwear; overalls; shirts; chemisettes; tee-shirts; combinations as clothing; slips as undergarments; suits; trousers; jackets; pullovers; waistcoats; sweaters; frocks; shirt yokes; shirt fronts; finished, ready-made linings as parts of clothing; coats; stuff jackets; pelerines; gabardines as clothing; waterproof clothing, namely, raincoats; finished textile pockets for clothing; pocket squares; jerseys as clothing; knitwear as clothing, namely, sweaters; underwear; caps; sashes for wear

c. , U.S. Registration No. 2,901,875, for jackets, T-shirts, and footwear in Class 25 with a first use in commerce date of June 1, 1996; and

d. , U.S. Registration No. 4,619,227, for the following:

**COMPLAINT; DEMAND FOR JURY TRIAL**

Class 25: Clothing, namely, shirts, pants, coats, dresses, skirts, footwear, headgear in the nature of headwear; shirts; clothing of leather or imitation leather, namely, pants, shirts, pants, coats; women's clothing, namely, lingerie, skirts and dresses; hoods as clothing; belts; gloves; scarves; hosiery; socks; slippers; beach or sports footwear; slips; shirts; short-sleeve shirts; tee-shirts; slips; trousers; jackets; pullovers; sweaters; shirt yokes; shirt fronts; finished textile linings for garments; coats; stuff jackets; pelerines; gabardine jackets; waterproof clothing, namely, rain coats; finished textile pockets for clothing; pockets for clothing; pocket squares; sweaters as clothing; knitwear as clothing, namely, sweaters; underwear; robes; caps; headwear; sashes for wear

17. True and correct copies of the registrations for the VON DUTCH Marks are attached hereto as composite **Exhibit 1**.

18. Plaintiff and its predecessors-in-interest have invested substantial resources into the VON DUTCH Marks and have continuously used the VON DUTCH Marks in commerce in connection with clothing and fashion accessories since at least as early as June 1, 1996.

19. The VON DUTCH brand achieved widespread cultural prominence in the early 2000s, becoming one of the most recognizable fashion brands in the United States. The brand's iconic trucker hat became a cultural phenomenon, worn by numerous high-profile celebrities including Britney Spears, Paris Hilton, Justin Timberlake, Jay-Z, Beyoncé, Madonna, Whitney Houston, and Ashton Kutcher, among others. The brand received extensive media coverage, including appearances on the cover of People magazine and on nationally televised programs. At its peak in 2003, the VON DUTCH brand generated over $33 million in annual sales.

20. The VON DUTCH brand has experienced a significant resurgence in recent years, attracting a new generation of celebrity supporters including Kylie Jenner, Travis Scott, Megan Thee Stallion, and Saweetie, among others. In 2024, internationally acclaimed recording artist Charli XCX released a song titled "Von Dutch" as the lead single from her critically acclaimed album Brat, further demonstrating the enduring cultural significance and fame of the VON DUTCH brand. The brand's continued cultural relevance across

7

**COMPLAINT; DEMAND FOR JURY TRIAL**

multiple generations of consumers underscores the strength and distinctiveness of the VON DUTCH Marks.

21. The VON DUTCH brand is sold and distributed in numerous countries worldwide, including the United States, Europe, Australia, Brazil, Hong Kong, Malaysia, Singapore, China, and Indonesia, reflecting the global recognition and fame of the VON DUTCH Marks.

22. Plaintiff has invested substantial time, energy, finances, and entrepreneurial effort in developing and fostering the reputation and legacy of the VON DUTCH brand, its popularity, fame, and prominence in the marketplace.

23. The VON DUTCH Marks are widely known and recognized as identifying Plaintiff as the source of high-quality clothing and fashion merchandise, and the marks have come to be associated in the minds of the consuming public with Plaintiff's products and the quality and goodwill associated therewith.

24. The VON DUTCH Marks have become famous and distinctive within the meaning of 15 U.S.C. § 1125(c), having achieved widespread recognition throughout the United States and internationally.

25. Plaintiff maintains strict control over the manner and use of the VON DUTCH Marks. Plaintiff exercises careful consideration in selecting and approving products and services that bear the VON DUTCH Marks and restricts such use and licensing to products and services that are of acceptably high quality and for which compensation is commensurate with the exploitation and value thereof.

*Plaintiff's Exclusive Retail Licensing Program*

26. Central to Plaintiff's business model is an exclusive licensing program through which Plaintiff grants carefully selected retail partners exclusive rights to manufacture, distribute,

**COMPLAINT; DEMAND FOR JURY TRIAL**

and sell specific VON DUTCH artwork and designs on apparel and related merchandise. Original artwork incorporating the VON DUTCH Marks is created by Plaintiff and/or its licensees' design teams, which is then distributed exclusively through designated retail channels.

27. Plaintiff's exclusive retail partners include, among others, Fashion Nova, Pacsun, Snipes, DTLR, Tillys, and Zumiez (collectively, the "**Authorized Retailers**"), each of which holds exclusive rights to specific VON DUTCH graphic designs and artwork for distribution through their respective retail channels. These exclusive arrangements are the foundation of Plaintiff's licensing revenue and brand strategy.

28. The exclusivity of these arrangements is critical to the value proposition for the Authorized Retailers and to Plaintiff's business. Each Authorized Retailer has agreed to carry and promote VON DUTCH products in reliance upon the understanding that the specific designs and artwork licensed to them will not be available through competing channels, and particularly not through unauthorized, low-cost counterfeit sources such as the SHEIN Sites.

29. Upon information and belief, Defendants' Infringing Products, as defined below, include not only products bearing the VON DUTCH Marks generally, but also products bearing specific artwork and designs that are subject to exclusive licensing agreements between Plaintiff and the Authorized Retailers. By offering for sale and selling counterfeit products bearing these exclusive designs, Defendants are directly undermining and destroying the exclusive arrangements upon which Plaintiff's licensing program depends.

*Defendants' Infringing Activities*

30. Upon information and belief, Defendants collectively operate as an integrated enterprise engaged in the marketing, promotion, distribution, offering for sale, and sale of fashion

9

**COMPLAINT; DEMAND FOR JURY TRIAL**

apparel and related merchandise, including through the SHEIN Sites, which Defendants own, operate, and control.

*The Infringing Products*

31. Through the SHEIN Sites, Defendants and/or third-party sellers operating on the SHEIN Sites have marketed, promoted, distributed, offered for sale, and sold, and/or have authorized and facilitated the marketing, promotion, distribution, offering for sale, and sale of, among other products, clothing and other merchandise bearing the VON DUTCH Marks, including reproductions, counterfeits, copies, and/or colorable imitations of the VON DUTCH Marks (the "**Infringing Products**"). The Infringing Products include, but are not limited to, t-shirts, hoodies, and related apparel and accessories featuring unauthorized uses of the VON DUTCH Marks, including the VON DUTCH word mark, the stylized VON DUTCH logo, and the flying eyeball design mark.

32. Representative screenshots of the Infringing Products bearing the VON DUTCH Marks as displayed on the SHEIN Sites are included in composite **Exhibit 3**.

33. In addition, the Infringing Products include products bearing specific artwork and graphic designs that are identical or substantially similar to artwork exclusively licensed by Plaintiff to its Authorized Retailers, including Fashion Nova, Snipes, DTLR, Pacsun, Tillys, and Zumiez. By offering for sale and selling products bearing these exclusive designs without authorization through the SHEIN Sites, Defendants are not merely infringing Plaintiff's trademarks but are commercially exploiting the creative output of Plaintiff's licensing program. Below is a non-inclusive comparison of an Authorized Retailer's exclusive VON DUTCH product and an exemplar of the Infringing Products as displayed on the SHEIN Sites:

10

**COMPLAINT; DEMAND FOR JURY TRIAL**

**Authorized Retailer's Exclusive Product**



**Defendants' Infringing Product**



A composite compilation of additional comparisons of Authorized Retailers' exclusive VON DUTCH products and the corresponding Infringing Products on the SHEIN Sites is attached hereto as composite **Exhibit 3**.

34. Plaintiff has obtained physical samples of the Infringing Products sold by Defendants. Upon inspection, these samples are clearly counterfeit, bearing marks and designs that are identical or substantially indistinguishable from Plaintiff's genuine, authorized products but of markedly inferior quality.

35. The Infringing Products are advertised and promoted by Defendants and/or third-party sellers on the SHEIN Sites through the use of the VON DUTCH Marks.

36. The Infringing Products continue to be marketed, promoted, offered for sale, and sold by Defendants and/or third-party sellers on the SHEIN Sites in the State of California and throughout the United States.

**COMPLAINT; DEMAND FOR JURY TRIAL**

37. Plaintiff has never authorized any of the Defendants, or any third-party seller on the SHEIN Sites, to use the VON DUTCH Marks in any manner, including in connection with the Infringing Products.

38. Neither Defendants nor any third-party seller on the SHEIN Sites contacted Plaintiff to seek or obtain permission, nor was Plaintiff compensated by any of them, for the use of the VON DUTCH Marks.

39. The use of the VON DUTCH Marks by Defendants and by third-party sellers on the SHEIN Sites was, and is, in conscious disregard of Plaintiff's trademark rights and of Plaintiff's exclusive right to control the use and exploitation of the VON DUTCH Marks.

*Notice of Infringement and Defendants' Failure to Act*

40. Beginning on or about February 6, 2026, Plaintiff, through undersigned counsel, submitted formal infringement reports to Defendants through Defendants' intellectual property complaint portal, identifying the unauthorized use of the VON DUTCH Marks and providing specific SKU numbers for infringing products. A second report was submitted on or about April 9, 2026 identifying additional infringing products. Defendants acknowledged receipt of these infringement reports. In parallel, Plaintiff also submitted infringement reports through its brand protection service Red Points. True and correct copies of Defendants' email communications to Plaintiff's counsel acknowledging receipt of Plaintiff's infringement reports are attached hereto as **Exhibit 4**.

41. Despite Defendants' acknowledgment of Plaintiff's infringement reports, numerous infringing products bearing the VON DUTCH Marks remained actively available for purchase on the SHEIN Sites. A non-exhaustive sampling of infringing products remaining live as of May 6, 2026 that were identified in Plaintiff's April 9, 2026 report included SKUs st26022101072884019072, sm26031216097116117420, sm26032914502056979175,

12

**COMPLAINT; DEMAND FOR JURY TRIAL**

sm260329145020569758622,                    sz260318190913610818402,                    and sm260402215336077937476.

42. Upon information and belief, additional infringement reports were submitted by or on behalf of Plaintiff through Red Points identifying further infringing products. Many of the products identified in these reports remained available for sale on the SHEIN Sites.

43. On or about May 6, 2026, Plaintiff, through undersigned counsel, sent Defendants a cease and desist letter highlighting Plaintiff's longstanding and extensive use of the VON DUTCH Marks, as well as the nature of Defendants' infringement and Defendants' direct responsibility therefor, demanding that Defendants immediately cease and desist any use of the VON DUTCH Marks, remove all infringing products from the SHEIN Sites, implement measures to prevent the relisting or reappearance of infringing products, and preserve all records relating to the marketing, promotion, sale, and distribution of products bearing the VON DUTCH Marks ("**Plaintiff's Cease & Desist Letter**"). Plaintiff's Cease & Desist Letter set a deadline of May 13, 2026 for written confirmation of compliance. A true and correct copy of Plaintiff's Cease & Desist Letter is attached hereto as **Exhibit 2**.

44. On or about May 12, 2026, counsel for Defendants acknowledged receipt of Plaintiff's Cease & Desist Letter. Defendants did not confirm compliance with Plaintiff's demands or commit to removing the infringing products by the May 13, 2026 deadline.

45. Upon information and belief, following receipt of Plaintiff's Cease & Desist Letter, Defendants removed certain specific SKUs identified in the letter. However, Defendants did not take the platform-wide action demanded by Plaintiff, and the vast majority of unauthorized products bearing the VON DUTCH Marks remained available for purchase on the SHEIN Sites.

**COMPLAINT; DEMAND FOR JURY TRIAL**

46. Defendants' failure to act is particularly egregious in light of their own stated policies. In acknowledging receipt of Plaintiff's infringement reports, Defendants represented that they "will remove or disable access to the disputed material" and "will penalize and/or terminate sellers, when appropriate, according to our repeat infringer policy." (Exhibit 4.) Defendants did neither in any meaningful way.

47. As of May 26, 2026, Defendants had taken no further action to address the infringement, and a search for "VON DUTCH" on the SHEIN Sites continued to return pages of unauthorized products bearing the VON DUTCH Marks.

48. As of approximately June 2, 2026, upon Plaintiff's further investigation, Defendants appeared to have removed "von dutch" as a recognized search term on the SHEIN Sites such that a direct search for "von dutch" no longer returned results. However, rather than constituting a meaningful remedy, this measure merely drove the infringing activity underground. Third-party sellers on the SHEIN Sites have actively circumvented this measure by using intentional misspellings and variations of the VON DUTCH Marks, including but not limited to "Von d," "Von Dut Ch," "Von D Utch," "Von O Dutch," and similar evasions. For example, a search for "Von D" on the SHEIN Sites continued to return numerous infringing products bearing the VON DUTCH Marks. A representative screenshot of search results for "Von D" on the SHEIN Sites is included in composite **Exhibit 3**.

49. Defendants' piecemeal approach of removing individual SKUs only when specifically identified by Plaintiff, blocking a single search term while allowing obvious variations to proliferate, and failing to take action against the sellers responsible for the infringing listings demonstrates that Defendants have not taken, and have no intention of taking, the meaningful, platform-wide action necessary to address the infringement. Defendants'

14

**COMPLAINT; DEMAND FOR JURY TRIAL**

measures are wholly inadequate and are designed to create the appearance of compliance while permitting the infringement to continue substantially unabated.

50. The fact that third-party sellers on the SHEIN Sites are employing deliberate circumvention tactics to continue selling counterfeit VON DUTCH products further demonstrates that the infringement is systematic, widespread, and ongoing, and that the SHEIN Sites have become a haven for counterfeit VON DUTCH merchandise.

51. To date, Defendants continue to willfully and unlawfully exploit, and to authorize and facilitate the exploitation of, Plaintiff's VON DUTCH Marks in commerce against the express demands by Plaintiff to cease and desist such use.

***Harm to Plaintiff's Exclusive Retail Partnerships***

52. As a direct and proximate result of the infringing conduct of Defendants and third-party sellers on the SHEIN Sites, Plaintiff's Authorized Retailers have expressed serious concerns about the continued presence of unauthorized VON DUTCH products on the SHEIN Sites and have taken concrete steps to reevaluate and reduce their business with Plaintiff.

53. One of Plaintiff's key Authorized Retailers communicated to Plaintiff in writing that, despite prior assurances that the issue would be resolved, the continued availability of counterfeit VON DUTCH products on the SHEIN Sites "is a major concern that directly impacts our confidence in the partnership moving forward," and that the retailer "must reevaluate the relationship and future Von Dutch business." The retailer stated: "We value partnerships that are aligned strategically and where commitments made are followed through on. We would appreciate immediate attention and a clear resolution plan regarding this matter." Upon information and belief, the same retailer has also communicated to

15

**COMPLAINT; DEMAND FOR JURY TRIAL**

Plaintiff that it intends to cut orders for VON DUTCH products as a direct result of the presence of counterfeit VON DUTCH merchandise on the SHEIN Sites.

54. Upon information and belief, other key customer accounts have likewise expressed concerns about the impact of the infringing products on the value of their exclusive arrangements with Plaintiff.

55. The harm to Plaintiff's exclusive retail partnerships is not speculative. It is real, ongoing, and escalating. The infringing conduct of Defendants and third-party sellers on the SHEIN Sites is undermining the very foundation of Plaintiff's licensing business model by flooding the market with cheap, unauthorized products that directly compete with the exclusive merchandise sold by Plaintiff's Authorized Retailers, thereby destroying the exclusivity and value of those arrangements.

56. Because the Authorized Retailers' exclusive designs are appearing on the SHEIN Sites in unauthorized, counterfeit form, the retailers can no longer assure their customers that the VON DUTCH designs they carry are truly exclusive, which is the core value proposition upon which these retail partnerships are built.

*Defendants' Pattern of Willful Infringement*

57. Upon information and belief, the infringement of the VON DUTCH Marks by Defendants and third-party sellers operating on the SHEIN Sites is no accident. Trademark and artwork pirating is part of Defendants' business model. Defendants have created a business plan which promotes a deliberate, knowing, and calculated decision to infringe intellectual property first to generate substantial profits, and ask questions later. The sheer scale of Defendants' voluminous online infringements, and Defendants' refusal to take simple, reasonable technical measures to prevent same, reveal a deliberate business strategy: infringe first, settle only if caught, and treat legal costs as a trivial expense compared to the

16

**COMPLAINT; DEMAND FOR JURY TRIAL**

much more substantial profits wrongfully gained. This misconduct is not an accident or oversight; it is how Defendants choose to operate, thus necessitating imposition of maximum statutory penalties and strong injunctive relief in order to deter continuing and future offenses.

58. Upon information and belief, according to public reporting, SHEIN made approximately $38 billion in revenue in 2024, reflecting a year-over-year growth of approximately 18 to 19 percent compared to the previous year. Despite this massive scale, upon information and belief, Defendants have little or no meaningful procedures in place to prevent the creation, listing, offering for sale, sale, and distribution of infringing products and counterfeits on the SHEIN Sites.

59. Defendants' knowing disregard for the intellectual property rights of others goes well beyond its trespasses against Plaintiff. Upon information and belief, SHEIN is an infamous, predatory company that has a history of, and reputation for, knocking off products of famous designers and brands and stealing the intellectual property of others, not just from small businesses and new fashion designers, but from established global brands as well.

60. Upon information and belief, according to media reports, the hashtag #sheinstolemydesign on TikTok had over 10 million views as of late 2023, reflecting the widespread and well-known nature of Defendants' pattern of intellectual property theft.

61. This pattern has resulted in numerous lawsuits filed against Defendants and their affiliated entities (including Zoetop Business Co., Ltd., Defendants' predecessor and/or parent entity) by other well-known brands:

   a. STUSSY: *Stussy, Inc. v. Shein Distribution Corp., et al.*, Case 8:25-cv-02736 (C.D. Cal.);
   b. COACH: *Tapestry, Inc. et al. v. Zoetop Business Co., Ltd. et al*, Case 2:25-cv-02224 (C.D. Cal.);
   c. CHROME HEARTS: *Chrome Hearts, LLC v. Zoetop Business Co., Ltd. et al.*, Case 2:23-cv-07006 (C.D. Cal.);

17
**COMPLAINT; DEMAND FOR JURY TRIAL**

d. TEVA: *Decker Outdoor Corp. v. Zoetop Business Co., Ltd. et al.*, Case 2:23-cv-09850 (C.D. Cal.);

e. UGG: *Decker Outdoor Corp. v. Zoetop Business Co., Ltd. et al.*, Case 2:20-cv-08635 (C.D. Cal.);

f. RALPH LAUREN: *PRL USA Holdings, Inc. v. Zoetop Business Co. Limited*, Case 2:21-cv-02424 (C.D. Cal.);

g. LEVI'S: *Levi Strauss & Co. v. Shein Group Limited et al.*, Case 5:18-cv-05247 (N.D. Cal.);

h. DR. MARTENS: *AirWair International Ltd. v. Zoetop Business Co., Limited*, Case 3:20-cv-07696 (N.D. Cal.) ; and

i. BRANDY MELVILLE: *Bastiat USA, Inc. v. Shein Distribution Corp. et al.*, Case 2:25-cv-05701 (C.D. Cal.),

among others.

62. Upon information and belief, Defendants have violated the rights of many more persons, both in the United States and internationally, many of whom took no action or did not sue, which further demonstrates Defendants' intentional theft of the intellectual property of others.

63. The wrongful and willful actions of Defendants and third-party sellers on the SHEIN Sites in the infringement of Plaintiff's proprietary rights in the VON DUTCH Marks have caused substantial injury to Plaintiff.

64. All conditions precedent to the institution of this action have been satisfied, discharged, excused, and/or waived.

## COUNT I
**FEDERAL TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)**
**(By Plaintiff Against All Defendants)**

65. Plaintiff repeats and re-alleges each and every allegation contained in all of the preceding paragraphs of the Complaint as if fully set forth herein.

66. The use in commerce by Defendants and/or third-party sellers on the SHEIN Sites of the VON DUTCH Marks has been without the consent of Plaintiff, the owner and registrant of

18

**COMPLAINT; DEMAND FOR JURY TRIAL**

U.S. Trademark Registration Nos. 2,380,173, 4,081,825, 2,901,875, and 4,619,227, in violation of 15 U.S.C. § 1114.

67. The use in commerce of, among other things, the SHEIN Sites, is also confusingly similar to Plaintiff's VON DUTCH Marks, and such use has been without the consent of Plaintiff.

68. The promotion and sale of merchandise through the use of the VON DUTCH Marks on the SHEIN Sites has been without the consent of Plaintiff.

69. The aforesaid uses in commerce of Plaintiff's VON DUTCH Marks, which are colorable imitations, counterfeits, copies, or confusingly similar to Plaintiff's VON DUTCH Marks, are likely to cause confusion, or to cause mistake, or to deceive, in violation of 15 U.S.C. § 1114, and they have caused such confusion.

70. The aforesaid uses in commerce of Plaintiff's VON DUTCH Marks have caused substantial confusion and mistake, and have deceived customers of Plaintiff, potential customers of Plaintiff, and others seeking products from Plaintiff, nationwide, and particularly in California, in violation of 15 U.S.C. § 1114.

71. Plaintiff placed Defendants on formal notice of Plaintiff's ownership of the VON DUTCH Marks as early as February 6, 2026, through its infringement report, and again on May 6, 2026, by cease and desist letter. Nevertheless, Defendants have continued to offer, and to authorize and facilitate the offering of, the Infringing Products in commerce using the VON DUTCH Marks.

72. By and through the aforementioned formal notice, Defendants were afforded the opportunity to purge themselves of the actions which they have conducted. Nevertheless, Defendants have failed to take the remedial actions reasonably requested by Plaintiff to end such willful infringement.

19
**COMPLAINT; DEMAND FOR JURY TRIAL**

73. Goods bearing the VON DUTCH Marks, or marks that are substantially indistinguishable therefrom, sold through the SHEIN Sites were counterfeit, and Defendants knew or reasonably should have known this. Plaintiff has obtained physical samples of the Infringing Products from the SHEIN Sites, and upon inspection, the products are clearly counterfeit.

74. The following facts, among others, establish that the trademark infringement and counterfeiting were knowing, intentional, and malicious, and/or that Defendants willfully blinded themselves to such trademark infringement and counterfeiting:

a. Defendants knew that the VON DUTCH Marks are owned by Plaintiff and that neither Defendants nor third-party sellers on the SHEIN Sites are authorized sellers of goods bearing the VON DUTCH Marks, including because of the infringement reports submitted through Defendants' own complaint portal and Plaintiff's Cease & Desist Letter;

b. Even after receiving actual notice of the infringements, Defendants deliberately failed to put in place standard effective procedures and monitoring to investigate and determine whether goods listed on the SHEIN Sites were counterfeits or infringements, and which would have identified and prevented further infringements;

c. Defendants are aware that the quality of the Infringing Products is far below the quality of genuine VON DUTCH products;

d. Even after being put on notice by Plaintiff of continuing infringements of the VON DUTCH Marks, Defendants failed to fully investigate the trademark infringement and counterfeiting, as even cursory searches of the SHEIN Sites would have revealed the existence of the Infringing Products; and

20

**COMPLAINT; DEMAND FOR JURY TRIAL**

e.  To date, Defendants and/or third-party sellers on the SHEIN Sites are still actively selling counterfeit products that infringe on the VON DUTCH Marks.

75. In view of the foregoing, Defendants have and continue to willfully infringe, and to authorize and facilitate the infringement of, Plaintiff's VON DUTCH Marks, whereby Plaintiff is entitled to damages, including Defendants' profits, other damages sustained by Plaintiff, the costs of this action, and reasonable attorneys' fees, as set forth in 15 U.S.C. § 1117. Plaintiff is entitled at an appropriate time to elect as an alternative measure of damages the remedy of statutory damages under 15 U.S.C. § 1117(c). Because the counterfeiting was willful as set forth herein, the amount awarded should be the statutory maximum per counterfeit mark per type of goods sold, offered for sale, or distributed, as the Court considers just.

76. Plaintiff is also entitled to an award of its attorneys' fees because this case qualifies as exceptional under 15 U.S.C. § 1117(a) in that Defendants' conduct is and was willful, knowing, intentional, fraudulent, and malicious.

77. A company of Defendants' size, generating approximately $38 billion in annual revenue, requires the maximum amount of statutory damages awarded against it to deter future illegal conduct. Not only are Defendants repeat violators of intellectual property laws, but Defendants do not act responsibly when caught counterfeiting, and appear to be operating with a business model where it is more profitable and cost effective to infringe first and ask questions later.

78. Plaintiff therefore seeks the maximum amount of statutory damages allowed under the law per counterfeit mark per type of goods sold, offered for sale, or distributed.

79. Defendants' wrongful acts threaten to continue to irreparably injure Plaintiff, unless and until said acts are enjoined by this Court, pursuant to 15 U.S.C. § 1116.

21

**COMPLAINT; DEMAND FOR JURY TRIAL**

**COUNT II**
**FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))**
**(By Plaintiff Against All Defendants)**

80. Plaintiff repeats and re-alleges each and every allegation contained in all of the preceding paragraphs of the Complaint as if fully set forth herein.

81. The use in commerce by Defendants and/or third-party sellers on the SHEIN Sites of Plaintiff's exact VON DUTCH Marks in connection with the provision of goods and services, including through the SHEIN Sites, has caused substantial confusion and is likely to continue to cause confusion and mistake, and to deceive, and to make consumers mistakenly believe that such goods and services are Plaintiff's goods, or that such goods and services are sponsored by, approved by, or somehow connected with Plaintiff, with consequent injury to Plaintiff and to consumers of Plaintiff's goods and services.

82. The aforesaid infringements of Plaintiff's VON DUTCH Marks have caused readily identifiable confusion nationwide and are likely to continue to cause confusion or mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval of the goods, services, or commercial activities of Defendants by Plaintiff, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

83. The aforesaid acts were undertaken with knowledge of Plaintiff's prior trademark rights in the VON DUTCH Marks.

84. Plaintiff has been and, absent injunctive relief, will continue to be irreparably harmed by the aforementioned acts, and has further suffered monetary damages in an amount to be determined at trial.

85. The wrongful acts entitle Plaintiff to damages and injunctive relief pursuant to 15 U.S.C. §§ 1116 and 1117.

22

**COMPLAINT; DEMAND FOR JURY TRIAL**

86. Plaintiff has no adequate remedy at law.

## COUNT III
### FEDERAL TRADEMARK DILUTION IN VIOLATION OF 15 U.S.C. § 1125(c)
### (By Plaintiff Against All Defendants)

87. Plaintiff repeats and re-alleges each and every allegation contained in all of the preceding paragraphs of the Complaint as if fully set forth herein.

88. The VON DUTCH Marks are famous and distinctive within the meaning of 15 U.S.C. § 1125(c). The factors demonstrating the fame of the VON DUTCH Marks include, but are not limited to:

a. The duration and extent of use of the VON DUTCH Marks in commerce, which spans nearly three decades, beginning with a first use in commerce date of June 1, 1996;

b. The duration and extent of advertising and publicity of the VON DUTCH Marks, including widespread media coverage, appearances on the cover of nationally distributed publications such as People magazine, and features on nationally televised programs;

c. The geographic extent of the trading area in which the VON DUTCH Marks are used, which encompasses the United States and numerous countries worldwide, including Europe, Australia, Brazil, Hong Kong, Malaysia, Singapore, China, and Indonesia;

d. The channels of trade for goods bearing the VON DUTCH Marks, which include major national and international retailers;

e. The degree of recognition of the VON DUTCH Marks in the trading areas and channels of trade used by Defendants, which is extensive, as the VON DUTCH brand achieved cultural phenomenon status in the early 2000s, generated over $33 million in annual sales at its peak, and has experienced a significant resurgence in recent years;

23
**COMPLAINT; DEMAND FOR JURY TRIAL**

f. The association of the VON DUTCH Marks with numerous high-profile celebrities across multiple generations, including Britney Spears, Paris Hilton, Justin Timberlake, Jay-Z, Beyoncé, Madonna, Whitney Houston, Ashton Kutcher, Kylie Jenner, Travis Scott, Megan Thee Stallion, and Saweetie, among others; and

g. The degree of recognition of the VON DUTCH brand as a cultural icon, as further evidenced by internationally acclaimed recording artist Charli XCX naming a song "Von Dutch" as the lead single from her critically acclaimed 2024 album Brat, demonstrating that the VON DUTCH Marks have achieved a level of fame that transcends the fashion industry and has entered mainstream popular culture.

89. The VON DUTCH Marks became famous and distinctive prior to the wrongful acts alleged herein.

90. The unauthorized use of the VON DUTCH Marks and confusingly similar marks in commerce by Defendants and/or third-party sellers on the SHEIN Sites dilutes the distinctive quality of the VON DUTCH Marks by blurring, in violation of 15 U.S.C. § 1125(c), in that:

a. The VON DUTCH Marks are inherently distinctive and have acquired distinctiveness through decades of continuous, extensive, and substantially exclusive use;

b. Defendants and/or third-party sellers on the SHEIN Sites are using marks that are identical or nearly identical to the VON DUTCH Marks;

c. Defendants and/or third-party sellers on the SHEIN Sites commenced use of the VON DUTCH Marks after the marks became famous;

d. The use of the VON DUTCH Marks by Defendants and/or third-party sellers on the SHEIN Sites creates an association between the VON DUTCH Marks and Defendants' inferior, counterfeit goods; and

24

**COMPLAINT; DEMAND FOR JURY TRIAL**

e.    Defendants intended to create an association with the VON DUTCH Marks by using marks that are identical or virtually identical to the VON DUTCH Marks.

91.    The unauthorized use of the VON DUTCH Marks by Defendants and/or third-party sellers on the SHEIN Sites also dilutes the distinctive quality of the VON DUTCH Marks by tarnishment, in violation of 15 U.S.C. § 1125(c), in that the sale of low-quality, counterfeit products bearing the VON DUTCH Marks through the SHEIN Sites harms the reputation of the VON DUTCH Marks by associating them with inferior goods and an unauthorized source, undermining the reputation for quality, authenticity, and exclusivity that Plaintiff has spent decades cultivating.

92.    The dilution of the VON DUTCH Marks has been willful, as evidenced by Defendants' continued infringement and facilitation of infringement after receipt of Plaintiff's infringement reports and Cease & Desist Letter.

93.    As a result, Plaintiff has suffered and will continue to suffer irreparable harm, and is entitled to injunctive relief, damages, and other remedies under 15 U.S.C. § 1125(c) and § 1117.

## COUNT IV
## CALIFORNIA COMMON LAW TRADEMARK INFRINGEMENT
### (By Plaintiff Against All Defendants)

94.    Plaintiff repeats and re-alleges each and every allegation contained in all of the preceding paragraphs of the Complaint as if fully set forth herein.

95.    As detailed above, Plaintiff is the exclusive owner of the VON DUTCH Marks.

96.    Defendants and/or third-party sellers on the SHEIN Sites have used, without the consent of Plaintiff, reproductions, counterfeits, copies, and/or colorable imitations of the VON DUTCH Marks in connection with the sale, distribution, offering for sale, or advertising of goods, the use of which is likely to cause confusion or mistake, or to deceive as to the source of origin of the goods.

25
**COMPLAINT; DEMAND FOR JURY TRIAL**

97. Defendants' wrongful acts alleged herein, including Defendants' authorization and facilitation of the use of the VON DUTCH Marks by third-party sellers on the SHEIN Sites, are intentional, willful, and in bad faith, and are causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the consumer public unless enjoined. Plaintiff has no adequate remedy at law. Plaintiff is entitled to injunctive relief, which is necessary so that Plaintiff may protect all of its rights, reputation, and interests in the VON DUTCH Marks.

98. In addition thereto, and as a direct and proximate result of the trademark infringement, Plaintiff is also entitled to, *inter alia*, an award of actual damages and disgorgement of Defendants' profits, the precise sum of which is presently unknown, but which will be determined in accordance with proof at trial, the destruction and seizure of goods, reasonable attorneys' fees, and costs of the action, together with prejudgment interest.

99. In engaging in the trademark infringement set forth above, Defendants have acted in bad faith, and in a reckless, knowing, willful, malicious, oppressive, and fraudulent manner, and with the intent and purpose of advancing their own gain at the expense of Plaintiff's rights, reputation, and interests. By reason of the foregoing, Plaintiff is entitled to punitive and exemplary damages on common law claims against Defendants, in an amount to be proven at trial.

**COUNT V**
**CALIFORNIA COMMON LAW DILUTION**
**(By Plaintiff Against All Defendants)**

100. Plaintiff repeats and re-alleges each and every allegation contained in all of the preceding paragraphs of the Complaint as if fully set forth herein.

101. As detailed above, Plaintiff is the exclusive owner of the VON DUTCH Marks, which are famous and distinctive, including in California.

26

**COMPLAINT; DEMAND FOR JURY TRIAL**

102. The VON DUTCH Marks became famous and distinctive prior to the wrongful acts alleged herein.

103. The wrongful acts of Defendants alleged herein, including the authorization and facilitation of the use of the VON DUTCH Marks by third-party sellers on the SHEIN Sites, have diluted and will, unless enjoined, continue to dilute and are likely to dilute the distinctive quality of the famous VON DUTCH Marks under the common law.

104. The wrongful acts of Defendants alleged herein have tarnished and will, unless enjoined, continue to tarnish, and are likely to tarnish the VON DUTCH Marks by undermining and damaging the valuable goodwill associated therewith.

105. Defendants' wrongful acts alleged herein are intentional, willful, and in bad faith, and are causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the consumer public unless enjoined. Plaintiff has no adequate remedy at law. Plaintiff is entitled to injunctive relief, which is necessary so that Plaintiff may protect all of its rights, reputation, and interests in the VON DUTCH Marks.

106. In addition thereto, and as a direct and proximate result of the trademark dilution and tarnishment, Plaintiff is also entitled to, *inter alia*, an award of actual damages and disgorgement of Defendants' profits, the precise sum of which is presently unknown, but which will be determined in accordance with proof at trial, the destruction and seizure of goods, reasonable attorneys' fees, and costs of the action, together with prejudgment interest.

107. In engaging in the trademark dilution set forth above, Defendants have acted in bad faith, and in a reckless, knowing, willful, malicious, oppressive, and fraudulent manner, and with the intent and purpose of advancing their own gain at the expense of Plaintiff's rights,

**COMPLAINT; DEMAND FOR JURY TRIAL**

reputation, and interests. By reason of the foregoing, Plaintiff is entitled to punitive and exemplary damages on common law claims against Defendants, in an amount to be proven at trial.

## COUNT VI
## COMMON LAW UNFAIR COMPETITION
### (By Plaintiff Against All Defendants)

108. Plaintiff repeats and re-alleges each and every allegation contained in all of the preceding paragraphs of the Complaint as if fully set forth herein.

109. The use of the VON DUTCH Marks by Defendants and/or third-party sellers on the SHEIN Sites has caused substantial confusion and is likely to continue to cause confusion between Defendants and/or their activities and Plaintiff and its activities nationwide, and such use infringes the valuable common law rights of Plaintiff in its VON DUTCH Marks.

110. The aforesaid activities also constitute unfair competition with Plaintiff by creating confusion as to the source or sponsorship of the goods and services offered through the SHEIN Sites and misappropriates the fine reputation and goodwill of Plaintiff in its VON DUTCH Marks, thereby injuring that reputation and goodwill, and diverting from Plaintiff the benefits and goodwill arising therefrom.

111. Defendants' wrongful acts have damaged Plaintiff in an amount to be determined at the time of trial.

112. Defendants have been on actual notice of Plaintiff's marks and registrations and have acted willfully in infringing, and continuing to infringe and facilitating the infringement of, Plaintiff's VON DUTCH Marks, thereby entitling Plaintiff to actual and punitive damages, in an amount to be proven at trial.

28

**COMPLAINT; DEMAND FOR JURY TRIAL**

113. Defendants' wrongful acts have irreparably injured Plaintiff, and threaten to continue to irreparably injure Plaintiff, unless and until said acts are enjoined by this Court, as Plaintiff has no adequate remedy at law.

**COUNT VII**
**CALIFORNIA UNFAIR COMPETITION AND UNFAIR BUSINESS PRACTICES (Cal. Bus. & Prof. Code § 17200, et seq.)**
**(By Plaintiff Against All Defendants)**

114. Plaintiff repeats and re-alleges each and every allegation contained in all of the preceding paragraphs of the Complaint as if fully set forth herein.

115. The wrongful acts of Defendants as alleged above, including without limitation, the violations of the Lanham Act and Defendants' authorization and facilitation of the use of the VON DUTCH Marks by third-party sellers on the SHEIN Sites, each constitute unfair competition and unfair business practices within the meaning of Cal. Bus. & Prof. Code § 17200, et seq.

116. Each of such wrongful acts is likely to deceive and/or confuse third persons and the consumer public and, in fact, has done so, including without limitation, that Defendants' wrongful acts have impaired Plaintiff's valuable goodwill and have otherwise adversely affected Plaintiff's business and reputation.

117. Defendants' wrongful acts alleged herein are intentional, willful, and in bad faith, and are causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the consumer public unless enjoined. Plaintiff has no adequate remedy at law. Plaintiff is entitled to injunctive relief, which is necessary so that Plaintiff may protect all of its rights, reputation, and interests in the VON DUTCH Marks.

118. In addition thereto, and as a direct and proximate result of Defendants' unfair competition and unfair business practices, Plaintiff is also entitled to, inter alia, the disgorgement of

29
**COMPLAINT; DEMAND FOR JURY TRIAL**

Defendants' profits, the precise sum of which is presently unknown, but which will be determined in accordance with proof at trial, and costs of the action, together with prejudgment interest.

## COUNT VIII
## VICARIOUS TRADEMARK INFRINGEMENT
### (By Plaintiff Against All Defendants)

119. Plaintiff repeats and re-alleges each and every allegation contained in all of the preceding paragraphs of the Complaint as if fully set forth herein.

120. As set forth above, Plaintiff alleges that Defendants own, operate, and control the SHEIN Sites, and are directly liable for the sale of the Infringing Products through the SHEIN Sites. Nonetheless, to the extent any of the Defendants maintain that they have merely facilitated sales as typical online marketplaces, Plaintiff alleges this claim for relief for vicarious trademark infringement in the alternative to its claims for relief for direct infringement and counterfeiting.

121. Upon information and belief, at all times relevant hereto, any third-party suppliers of the Infringing Products (the "**Third-Party Suppliers**") were the agents of Defendants, and were at all times acting within the course and scope of such agency, and with the knowledge and approval of each of Defendants, with respect to the Infringing Products, particularly inasmuch as Defendants have the authority to direct and bind the Third-Party Suppliers with respect to sales, offerings for sale, distributions, and advertising of the Infringing Products via the SHEIN Sites, and with Defendants asserting and maintaining control over transactions involving the Infringing Products.

COMPLAINT; DEMAND FOR JURY TRIAL

122. As such, the infringing conduct in selling, offering for sale, distributing, and advertising the Infringing Products on the SHEIN Sites is within the scope of agent/principal actual authority and/or is ratified by Defendants.

123. Notwithstanding Defendants' duty and right to control the SHEIN Sites and the acts of the Third-Party Suppliers as their agents in connection with the SHEIN Sites and the Infringing Products, Defendants have failed to take any reasonable steps to stop or otherwise prevent the trademark infringement and counterfeiting of the VON DUTCH Marks as set forth above, including without limitation, permanently disconnecting links directing users to listings advertising the Infringing Products. Defendants' right and ability to control the infringing activity on the SHEIN Sites is demonstrated by, among other things, Defendants' removal of certain individually identified SKUs following receipt of Plaintiff's Cease & Desist Letter and Defendants' subsequent blocking of the search term "von dutch" on the SHEIN Sites, both of which confirm that Defendants possess the technical capability to identify and remove infringing content but have chosen not to exercise that capability in any meaningful or comprehensive manner.

124. To the contrary, as alleged above, Defendants' efforts to address the infringement have been wholly inadequate. When notified of specific infringing products, Defendants removed only those individual SKUs while allowing the vast majority of infringing products to remain available. When Defendants blocked the search term "von dutch," Third-Party Suppliers on the SHEIN Sites immediately began using deliberate misspellings and variations to circumvent the restriction, and Defendants took no action to prevent or address these circumvention tactics. Defendants' failure to take meaningful, platform-wide action despite having actual knowledge of widespread infringement, and despite having the right and ability to control the infringing activity, further supports Defendants' vicarious liability.

**COMPLAINT; DEMAND FOR JURY TRIAL**

125. Upon information and belief, Defendants have a direct financial interest in the sale of the Infringing Products, as Defendants derive revenue from sales made through the SHEIN Sites and process all customer payments through their own services.

126. Defendants themselves acknowledge that the SHEIN Sites operate as a marketplace for third-party sellers. In their communications to Plaintiff acknowledging receipt of Plaintiff's infringement reports, Defendants stated that "material posted or listed by a seller on the SHEIN Marketplace may constitute intellectual property infringement." (Exhibit 4.)

127. Defendants are therefore vicariously liable for the damages caused to Plaintiff as a result of the Third-Party Suppliers' illegal sales, offerings for sale, distributions, and/or advertising of the Infringing Products on the SHEIN Sites.

128. Defendants' and the Third-Party Suppliers' wrongful conduct is causing immediate and continuing damages to Plaintiff, as well as irreparable harm and injury to Plaintiff's goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined. Defendants' and the Third-Party Suppliers' sales, offerings for sale, distributions, and advertisements of the Infringing Products have caused, and continue to cause, a loss of sales of Plaintiff's genuine products and will result in the loss of future sales to customers, unless enjoined, thereby causing substantial loss of profits to Plaintiff along with other financial damages. Such wrongful acts by Defendants and the Third-Party Suppliers have resulted in sales of the Infringing Products, and illegal profits which have unjustly enriched Defendants and the Third-Party Suppliers. Plaintiff has no adequate remedy at law.

129. As set forth above, Plaintiff is entitled to injunctive relief, which is necessary so that Plaintiff may protect all of its rights, reputation, and interests in the VON DUTCH Marks. In addition thereto, and as a direct and proximate result of Defendants' and the Third-Party

32

**COMPLAINT; DEMAND FOR JURY TRIAL**

Suppliers' trademark infringement and counterfeiting, Plaintiff is also entitled to, inter alia, an award of actual damages and disgorgement of Defendants' and the Third-Party Suppliers' profits, the precise sum of which is presently unknown, but which will be determined in accordance with proof at trial, the trebling of such damages and profits in accordance with 15 U.S.C. § 1117, reasonable attorneys' fees, and costs of the action under 15 U.S.C. §§ 1116 and 1117, together with prejudgment interest.

130. Plaintiff is also entitled at an appropriate time to elect as an alternative measure of damages the remedy of statutory damages under 15 U.S.C. § 1117(c). Because Defendants' and the Third-Party Suppliers' counterfeiting was willful as set forth herein, the amount awarded should be the statutory maximum per counterfeit mark per type of goods sold, offered for sale, or distributed, as the Court considers just.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against each of Defendants as follows:

1. Determining that Defendants' use of the VON DUTCH Marks constitutes:

   a. Trademark infringement and counterfeiting in violation of 15 U.S.C. § 1114;

   b. False designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a);

   c. Trademark dilution in violation of 15 U.S.C. § 1125(c);

   d. California common law trademark infringement;

   e. California common law dilution;

   f. Unfair competition in violation of the common law of the State of California;

   g. Unfair competition and unfair business practices in violation of Cal. Bus. & Prof. Code § 17200, et seq.; and

   h. Vicarious trademark infringement;

**COMPLAINT; DEMAND FOR JURY TRIAL**

2. That Defendants and all those acting in concert with them be permanently restrained and enjoined from using the VON DUTCH Marks or any colorable imitation thereof, with respect to any merchandise or similar goods or services;

3. That Defendants and anyone associated with them and all those acting in concert with them be permanently restrained and enjoined from infringing the VON DUTCH Marks or using any reproduction, counterfeit, copy, or colorable imitation thereof in any promotion, advertising, marketing activities, or sale of commercial products;

4. For the full value of all Defendants' profits derived from Defendants' unlawful acts set forth herein, together with the damages of Plaintiff, including lost profits, in an amount to be determined, in addition to a full accounting of all infringing sales and revenues;

5. That the amount of any judgment be trebled pursuant to 15 U.S.C. § 1117, due to the willful infringement of the VON DUTCH Marks by Defendants;

6. For an award of compensatory damages, consequential damages, lost profits, and/or disgorgement of Defendants' profits;

7. For enhanced damages;

8. For punitive and exemplary damages in a sum to be determined at trial on claims under California law;

9. A finding that this is an "exceptional case" under 15 U.S.C. § 1117(a);

10. The costs of this action and Plaintiff's reasonable attorneys' fees, to be taxed against the Defendants, in accordance with 15 U.S.C. § 1117;

11. All advertising materials, brochures, handouts, or any other materials containing the VON DUTCH Marks, or any colorable imitation thereof, or any other similar mark, be accounted for, and delivered to the attorneys for Plaintiff for such disposal and/or destruction as Plaintiff may exercise pursuant to 15 U.S.C. § 1118;

34
**COMPLAINT; DEMAND FOR JURY TRIAL**

12. For a permanent injunction, pursuant to 15 U.S.C. § 1116, against Defendants and anyone associated with Defendants, as well as those persons in active concert or participation with Defendants who receive actual notice of the order by personal service or otherwise from:

   a. Using the VON DUTCH Marks (however spelled, whether capitalized, abbreviated, singular or plural, printed or stylized, whether used alone or in combination with any word or words, and whether used in caption, text, orally or otherwise); or any reproduction, counterfeit, copy, colorable imitation or confusingly similar variation of the VON DUTCH Marks as a trade name, trademark or service mark, or in any other manner which suggests in any way that Defendants and/or their activities originate from, are affiliated with, or are sponsored, authorized, approved or sanctioned by Plaintiff, or that Plaintiff and/or its activities are affiliated in any way with the Defendants;

   b. Infringing the VON DUTCH Marks or any colorable imitation thereof;

   c. Using in connection with their activities any false or deceptive designation, representation, or description of Plaintiff or the VON DUTCH Marks, whether by symbols or words or statements, which would damage or injure Plaintiff or give Defendants an unfair competitive advantage in the marketplace;

   d. Using any internet website or domain name or metatag or online account which includes the VON DUTCH Marks or any similar marks;

   e. Purchasing or using any searchable key words which include the VON DUTCH Marks;

   f. Engaging in acts of state or common law trade name infringement, trademark infringement, service mark infringement, unfair competition or misappropriation which would damage or injure Plaintiff;

   g. Diluting the trade name and trademarks of Plaintiff; and

35

**COMPLAINT; DEMAND FOR JURY TRIAL**

h.    Inducing, encouraging, aiding, abetting or contributing to any of the aforesaid acts.

13.  For such other relief as the Court deems just and proper.


Dated: June 5, 2026                                    /s/ Gregory Kenyota
                                                        Gregory Kenyota (SBN 282304)
                                                        Bochner PLLC
                                                        1040 Avenue of the Americas, 15th Fl.
                                                        New York, NY 10018
                                                        Phone Number: (646) 971-0685
                                                        Email:  gkenyota@bochner.law

                                                        Attorney for Plaintiff

36
**COMPLAINT; DEMAND FOR JURY TRIAL**

## DEMAND FOR JURY TRIAL

Plaintiff WSG Von Dutch, LLC hereby demands trial by jury of all issues that are so triable in the above action.


Dated: June 5, 2026

/s/ Gregory Kenyota

Gregory Kenyota (SBN 282304)
Bochner PLLC
1040 Avenue of the Americas, 15th Fl.
New York, NY 10018
Phone Number: (646) 971-0685
Email:  gkenyota@bochner.law

*Attorneys for Plaintiff*

37

**COMPLAINT; DEMAND FOR JURY TRIAL**